# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIM. NO. 1:10-CR-243** |
| | : | |
| v. | : | **(Judge Kane)** |
| | : | |
| | : | **(Magistrate Judge Carlson)** |
| **BARRY LEE HOLLAND** | : | |

## MEMORANDUM AND ORDER

### I.  Introduction

Barry Holland is a pretrial detainee detained in the Dauphin County Prison, where he awaits trial for federal drug trafficking and firearms charges in <u>United States v. Holland</u>, 1:19-CR-220, and is also awaiting revocation proceedings based upon this new criminal conduct in <u>United States v. Holland</u>, 1:10-CR-243. These charges and supervised release revocations are the latest episodes in Holland's decades-long criminal history, which began when he was sixteen years old and includes drug and firearms convictions, as well as convictions for escape and false identification to law enforcement.

This case comes before us for consideration of a motion for temporary release of the defendant (Doc. 198) filed in this revocation matter pursuant to 18 U.S.C. § 3142(i), which provides that:

> The judicial officer may, . . ., permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to

1

be necessary for preparation of the person's defense or for another compelling reason.

18 U.S.C. § 3142 (i).

In the instant case, the "compelling reason" that the defendant asserts justifies his temporary release from pre-trial detention is the COVID-19 pandemic that is sweeping the nation, and the dangers of infection which may result from close confinement in a custodial setting. This motion is ripe for resolution.

We acknowledge the gravity of the defendant's concerns, which are shared by all Americans as this nation faces a pandemic without precedent in the past century of our nation's history. In addressing the instant motion, we must assess any individual medical concerns, apply the legal benchmarks mandated by Congress, and weigh these concerns against the important societal interests promoted by the Bail Reform Act, which calls for the detention of those defendants who present a danger to the community. Having conducted an individualized assessment of the facts and circumstances presented in this case, for the reasons set forth below, as well as those previously stated in the companion case of United States v. Holland, 1:19-CR-220, it is ordered that the motion for temporary release is DENIED.

## II.   Factual Background and Procedural History

On July 17, 2019, the defendant was charged in United States v. Holland, 1:19-CR-220 with conspiracy to possess with intent to distribute controlled substances and distribution of controlled substances in violation of 21 U.S.C. §§

841(a)(1) and 846, possession of a firearm in furtherance of these drug trafficking crimes in violation of 18 U.S.C. § 924(c), and illegal possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Following the defendant's arrest, the United States moved pursuant to 18 U.S.C. § 3142 to detain the defendant pending trial. Initial proceedings were then conducted in this case on July 30, 2019, at which time a second superseding supervised release violation petition was also filed against Holland in the instant case.

At the time of these initial proceedings, the probation office prepared a comprehensive pre-trial services report, which provided the following information concerning the defendant's social and medical history, prior history of substance abuse, and criminal record: The defendant was a resident of Harrisburg, Pennsylvania at the time he was indicted. Holland had a ninth-grade education and worked as a personal trainer while he was on supervision for previous charges. The defendant had a lengthy criminal history, which began when he was sixteen years old and included convictions for drug trafficking, firearms possession, false identification to law enforcement and escape. The pre-trial services report also recommended the defendant's detention based upon a careful evaluation of the following individual characteristics of the defendant: the nature of the charged offenses and prior criminal convictions; substance abuse; history of violent behavior; criminal activity while under supervision; history of failure to appear; and a history

of using aliases or false identification. Moreover, it appeared that Holland committed these offenses while on supervised release from another, prior federal drug trafficking conviction yet another aggravating factor in this case.

Following these initial proceedings, we ordered the defendant detained pursuant to 18 U.S.C. § 3142, finding that the defendant presented a risk of flight and danger to the community, and that there was no condition or combinations of conditions which could assure the safety of the community or the defendant's appearance in court as required. On this score, we noted that the current charges gave rise to multiple presumptions in favor of Holland's detention and specifically found that the following factors supported the pre-trial detention of the defendant: the lengthy incarceration period the defendant faces on the charged offenses; his prior criminal history; and his history of violence, use of weapons, and substance abuse; his prior failure to appear in court; and prior attempts to evade law enforcement.

The instant motion for temporary release does not focus upon or directly challenge any of these initial detention findings or determinations. Instead, the defendant's motion for release rests upon a concern shared by all: the risk of infection due to the current coronavirus pandemic. As the defendant notes, this risk of community spread is heightened in a custodial setting, where the very nature of confinement limits the ability of individuals to engage in the type of social isolation that is recommended to curb the spread of this disease. Notably, however, Holland

does not identify any medical factors which would make him particularly susceptible to COVID-19.

### III. <u>Discussion</u>

#### A. <u>Temporary Release Under 18 U.S.C. § 3142</u>

While cast as a motion seeking temporary release under 18 U.S.C. § 3142(i), this motion is best understood and evaluated in the context of the Bail Reform Act as a whole. In the Bail Reform Act, 18 U.S.C. § 3141, *et seq.*, Congress created a comprehensive set of statutory guidelines governing release and detention decisions for criminal cases in federal court. As one court has recently observed:

> Before this Court can turn to the analysis under 18 U.S.C. § 3142(i), it is essential to look at the overarching structure of the statute. The fundamental precept of the Bail Reform Act mandates the release of individuals so long as the court can be reasonably assured the defendant does not pose a flight risk or danger to the community. 18 U.S.C. § 3142. To the extent that conditions, or a combination of conditions, can be fashioned to reasonably provide such assurances, the individual must be released, as detention is "the carefully limited exception." <u>Id.</u>; see also <u>United States v. Salerno</u>, 481 U.S. 739, 755 (1987).
>
> In assessing what conditions, if any, can be fashioned, judges are directed to take into account available information pertaining to the factors identified under 18 U.S.C. § 3142(g). Those factors include the nature and circumstances of the offense charged, including whether it involves controlled substances or firearms; the weight of the evidence against the defendant; the defendant's history and characteristics (including history relating to drug abuse, defendant's criminal history, and record of appearing at court proceedings); whether the detainee was on probation, parole, or other court supervision at the time of the allegedly offensive conduct; and the nature and seriousness of the danger to any person or the community posed by the defendant's release. 18 U.S.C. § 3142(g). Ultimately, the information provided in

each case aids in the individualized assessment that will result in the release or the detention of the person.

United States of America v. Cox, 2020 WL 1491180, *2 (D. Nev. Mar. 27, 2020).

Beyond this individualized assessment mandated by law, the Bail Reform Act also enjoins us to weigh release and detention decisions against a series of statutory presumptions. Among these presumptions which guide us in this custodial calculus are a series of statutory presumptions in favor of detention for defendants charged with violent crimes, serious drug trafficking offenses, or crimes involving the sexual exploitation of the most vulnerable in society, our children. As to these defendants, "[s]ubject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed," one of these enumerated offenses. 18 U.S.C. § 3142(e)(3). In this regard, it is also well-settled that an "indictment [charging an enumerated offense] is sufficient to support a finding of probable cause triggering the rebuttable presumption of dangerousness under § 3142(e)." United States v. Suppa, 799 F.2d 115, 119 (3d Cir. 1986).

Further, in this factual setting where Holland is being held, in part, on alleged supervised release violations, Rule 32.1 of the Federal Rules of Criminal Procedure and 18 U.S.C. § 3143(a)(1) provide that: "The burden of establishing by clear and convincing evidence that the person will not flee or pose a danger to any other person

or to the community rests with the [defendant]." Fed. R. Crim. P. 32.1. Thus, Holland faces a particularly exacting and high burden of proof and persuasion in this case.

Cast against this comprehensive statutory scheme prescribing the procedure for making bail and detention decisions, § 3142(i) constitutes a limited safety valve provision, enabling courts to re-examine detention decisions "to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i). Until recently, there was a relative paucity of case law construing for us what would constitute a "compelling reason" justifying the temporary release of a previously detained defendant. Of late, however, a rising tide of case law has construed the meaning and reach of § 3142(i) in the context of continuing custody decisions in the age of coronavirus.

From these cases a few guiding principles have emerged. First, the very nature of the standard prescribed by statute—which requires a showing of some "compelling reason" to warrant temporary release from custody—suggests that such motions must meet exacting standards and "the few courts that have ordered temporary release on the basis of such a condition have done so only 'sparingly' and typically in order 'to permit a defendant's release where, for example, he is suffering from a terminal illness or serious injuries[,]' " United States of America v. Lee, No. 19-CR-298 (KBJ), 2020 WL 1541049, at *3 (D.D.C. Mar. 30, 2020) (quoting United

7

States v. Hamilton, No. 19-CR-54-01, 2020 WL 1323036, at *2 (E.D.N.Y. Mar. 20, 2020)).

Second, like the initial decision to detain, a determination of whether a movant has shown compelling reasons justifying temporary release is an individualized judgment which takes into account the unique circumstances of each case and each defendant. Thus, courts have allowed for temporary release where a defendant's specific circumstances presented a compelling and immediate need for release. For example, release of a defendant is permitted under § 3142(i) when that defendant is suffering from a terminal illness or serious injuries. See, e.g., United States v. Scarpa, 815 F. Supp. 88 (E.D.N.Y. 1993) (permitting release of defendant suffering from terminal AIDS that could no longer be managed by correctional authorities); see also United States v. Cordero Caraballo, 185 F. Supp. 2d 143 (D.P.R. 2002) (permitting release where defendant sustained "serious" and "grotesque" gunshot wounds, suffered a heart attack, underwent an emergency tracheotomy, was partially paralyzed, could not use his hands, and had open and infected wounds about his body, and where the United States Marshal's Service reused to take custody of him until his wounds closed).

There is a necessary corollary to this principle, calling for an individualized and specific showing of a compelling reason to satisfy the movant's burden of proof under § 3142(i). Cases construing § 3142(i) generally "have rejected emergency

motions for release of otherwise healthy and potentially violent defendants based solely on the generalized risks that COVID-19 admittedly creates for all members of our society." United States v. Lee, No. 19-CR-298 (KBJ), 2020 WL 1541049, at *6 (D.D.C. Mar. 30, 2020) (citing United States v. Cox, No. 19-cr-271, 2020 WL 1491180 (D. Nev. Mar. 27, 2020)); United States v. Green, No. 19-cr-304, 2020 WL 1477679 (M.D. Fla. Mar. 26, 2020); United States v. Steward, No. 20-cr-52, 2020 WL 1468005 (S.D.N.Y. Mar. 26, 2020); United States v. Hamilton, No. 19-cr-54, 2020 WL 1323036 (E.D.N.Y. Mar. 20, 2020); see also United States v. Clark, No. 19-40068-01-HLT, 2020 WL 1446895, at *3 (D. Kan. Mar. 25, 2020). Rather, at a minimum courts have typically required proof of a "[d]efendant's particular vulnerability to the disease [in order to] constitute a compelling reason for release under § 3142(i)." United States of Am. v. Keith Kennedy, No. 18-20315, 2020 WL 1493481, at *4 (E.D. Mich. Mar. 27, 2020), reconsideration denied sub nom. United States v. Kennedy, No. 18-20315, 2020 WL 1547878 (E.D. Mich. Apr. 1, 2020).

The United States Court of Appeals for the Third Circuit has very recently underscored for us the necessity of a more particularized showing of a compelling need for release beyond proof of the generalized risks posed by COVID-19 when a prisoner seeks release from jail. Addressing this question in another custodial setting, petitions for compassionate release from custody, the court of appeals stated in terms that are equally applicable here that:

> We do not mean to minimize the risks that COVID-19 poses in the . . . prison system, particularly for inmates . . . . But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify . . . release.

United States of America v. Raia, No. 20-1033, 2020 WL 1647922, at *2 (3d Cir. Apr. 2, 2020).

Finally, any determination of whether a movant has established compelling reasons which now warrant temporary release from custody must take into account the important considerations of public safety and flight which animated the original decision to detain the offender pending trial. Thus, "in considering the propriety of temporary release, the court would need to balance the reasons advanced for such release against the risks that were previously identified and resulted in an order of detention." United States of America v. Cox, 2020 WL 1491180, *2 (D. Nev. Mar. 27, 2020). In practice, therefore, a decision on a motion seeking release under § 3142(i) entails an informed judgment assessing both individual health concerns and broader public safety interests. In reaching these judgments the court must:

> [E]valuate at least the following factors: (1) the original grounds for the defendant's pretrial detention, (2) the specificity of the defendant's stated COVID-19 concerns, (3) the extent to which the proposed release plan is tailored to mitigate or exacerbate other COVID-19 risks to the defendant, and (4) the likelihood that the defendant's proposed release would increase COVID-19 risks to others. The court will not necessarily weigh these factors equally, but will consider them as a whole to help guide the court's determination as to whether a "compelling reason" exists such that temporary release is "necessary." § 3142(i)

United States v. Clark, No. 19-40068-01-HLT, 2020 WL 1446895, at *3 (D. Kan. Mar. 25, 2020).

It is against this statutory backdrop that we evaluate the instant request for temporary release from custody.

### B. The Defendant's Motion for Temporary Release Will Be Denied.

Out the outset, we note that "[w]hile the COVID-19 pandemic has given rise to exceptional and exigent circumstances that require the prompt attention of the courts, it is imperative that they continue to carefully and impartially apply the proper legal standards that govern each individual's particular request for relief." United States v. Roeder, No. 20-1682, 2020 WL 1545872, at *3 (3d Cir. Apr. 1, 2020). In this case, our application of the legal standards mandated by § 3142(i), requires us to assess both the public safety grounds for the defendant's initial detention as well as: (1) the specificity of the defendant's stated COVID-19 concerns; (2) the extent to which the proposed release plan is tailored to mitigate or exacerbate other COVID-19 risks to the defendant; and (3) the likelihood that the defendant's proposed release would increase COVID-19 risks to others.

Turning first to an individualized evaluation of the defendant's COVID-19 concerns, our assessment begins with a recognition of the unprecedented health care crisis presented by the coronavirus pandemic. However, it is clear that under § 3142(i), we cannot grant release of a defendant previously deemed to be a danger

to public safety or a risk of flight "based solely on the generalized risks that COVID-19 admittedly creates for all members of our society." United States v. Lee, No. 19-CR-298 (KBJ), 2020 WL 1541049, at *6 (D.D.C. Mar. 30, 2020). In this case, the defendant does not allege any specific concerns regarding the virus, such as physical health-related concerns, beyond a genuine, but generalized, concern regarding the risks created by COVID-19, to warrant his pretrial release.

Moreover, while current conditions at Dauphin County Prison, which is undergoing a significant outbreak of COVID-19, certainly give us pause, and indeed makes this a closer case, we must still weigh these health concerns against the substantial public safety considerations which led us to order the defendant's detention in the first instance. On this score, we are compelled to conclude that the defendant's past conduct does not inspire faith on his part that he would abide by any conditions of release. In this case, the following factors, unique to the defendant, compelled the decision to detain the defendant as a risk of flight and danger to the community. Holland is subject to multiple presumptions in favor of his continued detention based upon the serious firearms and drug trafficking charges lodged against the defendant. We note that the defendant also has a federal detainer lodged against him in this case for alleged violations of his supervised release conditions in March of 2019. Thus, Holland's current charges in United States v. Holland, 1:19-CR-220, are alleged to have been committed while he was on federal supervision in

this case. This fact further cautions against Holland's release. In addition, we specifically found that the following factors supported the pre-trial detention of the defendant: the lengthy incarceration period the defendant faces on the charged offenses; his prior criminal history; and his history of violence, use of weapons, and substance abuse; his prior failure to appear in court; and prior attempts to evade law enforcement.

## IV. Conclusion

Weighing and balancing these countervailing considerations we conclude that the safety concerns that led us to order the detention of the defendant pending trial have not been overcome by the defendant's generalized concerns regarding the spread of or exposure to the COVID-19 virus while incarcerated. Based upon these findings, the defendant's motion for temporary release (Doc. 198) pursuant to 18 U.S.C. § 3142(i) will be DENIED. "Because the Court is mindful that both the conditions in . . . jail and the COVID-19 pandemic itself are both rapidly evolving, it will entertain a renewed request for release if—at some point in the future—it becomes clear" that there are compelling reasons that justify the defendant's release. United States of America v. Lee, No. 19-CR-298 (KBJ), 2020 WL 1541049, at *7 (D.D.C. Mar. 30, 2020). Therefore, this order is entered without prejudice to renewal of this motion at some future date should the defendant's circumstances materially change.

An appropriate order follows.

>*/s/ Martin C. Carlson*
>Martin C. Carlson
>United States Magistrate Judge

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIM. NO. 1:10-CR-243** |
| | : | |
| **v.** | : | **(Judge Kane)** |
| | : | |
| | : | **(Magistrate Judge Carlson)** |
| **BARRY LEE HOLLAND** | : | |

## **ORDER**

In accordance with the accompanying Memorandum Opinion, the defendant's motion for temporary release pursuant to 18 U.S.C. § 3142(i) (Doc. 198) is DENIED. "Because the Court is mindful that both the conditions in . . . jail and the COVID-19 pandemic itself are both rapidly evolving, it will entertain a renewed request for release if—at some point in the future—it becomes clear" that there are compelling reasons that justify the defendant's release. United States of America v. Lee, No. 19-CR-298 (KBJ), 2020 WL 1541049, at *7 (D.D.C. Mar. 30, 2020). Therefore, this order is entered without prejudice to renewal of this motion at some future date should the defendant's circumstances materially change.

So ordered this 24th day of July 2020.

/s/ Martin C. Carlson
Martin C. Carlson
United States Magistrate Judge